UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C25-5572-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. He argues that the administrative law judge ("ALJ") erred in evaluating the medical evidence, his testimony, and lay witness statements, leading to an incorrect residual functional capacity ("RFC") assessment and step five finding. (Dkt. # 19.) The Commissioner responds that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 23.) Plaintiff filed a reply. (Dkt. # 24.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in 1969, has at least a high school education, and has no past relevant work. AR at 85, 824. He has not engaged in substantial gainful activity since March 15, 2019, the alleged onset date. *Id.* at 809. He applied for benefits in September 2020. *Id.* at 806. His application was denied initially and on reconsideration, and he requested a hearing. *Id.* After a December 2021 hearing, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 874-91. Plaintiff appealed, and this Court remanded. *Id.* at 904-12.

While the appeal was pending, Plaintiff filed a new application and was found disabled as of August 3, 2022. AR at 919-40. Following a January 2025 hearing on remand, the ALJ found that Plaintiff had been disabled since August 3, 2022, but not before that date. *Id.* at 803-35.

Using the five-step disability evaluation process,[2] the ALJ found that Plaintiff had the severe impairments of degenerative disc disease status post cervical fusion, degenerative joint disease, radiculopathy, obesity, asthma, depression, and pain syndrome. AR at 809. The ALJ determined that Plaintiff had the RFC to perform light work that: does not require climbing ladders, ropes, or scaffolds; does not require more than frequent stooping, crouching, or crawling; does not require more than occasional overhead reaching; does not require more than frequent use of foot controls; does not require more than frequent handling, fingering, or feeling; does not require more than occasional exposure to hazards; does not require more than occasional exposure to concentrated pulmonary irritants; is quota-based rather than production-paced; and allows a break after two hours of work. *Id.* at 811-12. The ALJ found that Plaintiff had no past relevant work, but that before August 3, 2022, he could perform the jobs of

---

[2] 20 C.F.R. § 404.1520.

ORDER - 2

routing clerk, collator operator, and fundraiser II, and was therefore not disabled prior to that date. *Id.* at 824-26.

Plaintiff appealed the Commissioner's final decision to this Court. (Dkt. # 5.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of benefits if the ALJ's decision is based on legal error or not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court must consider the record as a whole. *Id.*

The Court may not reweigh the evidence or substitute its judgment for the ALJ's. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is responsible for evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities. *Smartt*, 53 F.4th at 494-95. Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Id.* Even if the ALJ errs, reversal is not warranted unless the error is harmful. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the decision bears the burden of showing harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### IV.    DISCUSSION

**A.    The ALJ Did Not Err in Evaluating Medical Evidence**

Under the applicable regulations, the ALJ must explain the persuasiveness of each medical opinion, focusing on supportability and consistency. 20 C.F.R. § 404.1520c(a)-(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

ORDER - 3

     1.  *Michael J. Maidan, D.O.*

On April 29, 2022, treating physician Dr. Maidan opined that Plaintiff could sit and stand less than two hours each per day, lift or carry up to 20 pounds less than occasionally, needed to shift positions at will and walk every 60 minutes, had extreme postural and manipulative limits, required unscheduled 15-minute breaks every hour, would be off task at least 25% of the workday, and would miss more than four days per month. AR at 1111-15.

The ALJ found this opinion unpersuasive for three reasons. AR at 822. First, the ALJ found the extreme limitations, allegedly present since 2019, inconsistent with largely benign examination findings before August 2022. *Id.* at 813-20 (citing, *e.g.*, *id.* at 462, 469, 483, 522, 529, 541, 764, 1229, 1245, 1252). In September 2020, Plaintiff had normal musculoskeletal, mental-status, and psychiatric findings. *Id.* at 469-70. In October 2020, aside from right-elbow tenderness, he had normal range of motion, a supple neck, normal strength, and normal mental-status findings. *Id.* at 462. In August 2021, musculoskeletal, neurological, and psychiatric exams were again normal. *Id.* at 765. Even in May 2022, he had good upper-extremity range of motion, normal strength, full, pain-free cervical range of motion, and a nontender cervical spine. *Id.* at 1246. The ALJ reasonably found this pattern inconsistent with the level and duration of restriction assessed.

Second, the ALJ found the opinion inconsistent with the testimony of medical expert John Kwock, M.D., whom he found more persuasive. AR at 822. Dr. Kwock testified that imaging did not corroborate the alleged severity of Plaintiff's impairments and that multiple exams were relatively normal. *Id.* at 844-59. The ALJ permissibly found this testimony—tied to the imaging and exams—more consistent with the record than a check-box form asserting extreme limitations.

ORDER - 4

Third, the ALJ found Dr. Maidan's opinion inconsistent with Plaintiff's own reports concerning headaches. AR at 822. The ALJ cited records in which Plaintiff denied headaches or reported only slight, infrequent, or no longer significant headaches. *Id.* (citing *id.* at 323, 335, 346, 348, 365, 490, 504, 513, 521, 567, 668, 1270, 1315). This reasonably undercut an opinion premised in large part on severe, ongoing headache pain causing extreme functional limitations. *See id.* at 1111-15.

Plaintiff argues that, as a treating physician, Dr. Maidan had a superior longitudinal perspective and that the "overall records" support his conclusions. (Dkt. # 19 at 5.) Under current regulations, treating status is not controlling; the ALJ must evaluate supportability and consistency. *Woods*, 32 F.4th at 792. The ALJ did so, citing specific objective findings and Plaintiff's own reports that did not support the degree of limitation assessed. *See Ahearn*, 988 F.3d at 1115. Plaintiff's generalized reference to "other records" does not identify any specific inconsistency in the ALJ's reasoning or show harmful error. *See Shinseki*, 556 U.S. at 409.

Substantial evidence therefore supports the ALJ's evaluation of Dr. Maidan's opinion.

### 2. *John Kwock, M.D., and State Agency Physicians*

Plaintiff contends Dr. Kwock's opinion was invalid because he did not recognize "central pain syndrome" as an accepted neurological diagnosis, allegedly undermining both his opinion and the ALJ's decision. (Dkt. # 19 at 8-9.)

The ALJ found Dr. Kwock's opinion persuasive. AR at 823-24. He summarized Dr. Kwock's testimony that "central pain syndrome" is an unusual clinical term and that pain is not fully understood, but also noted that Dr. Kwock offered functional-limitation opinions tied to the imaging and physical examinations. *Id.* at 818, 844-59. Plaintiff does not meaningfully engage this part of the opinion. *See Shinseki*, 556 U.S. at 409.

ORDER - 5

Critically, the ALJ did not use Dr. Kwock's testimony to deny the existence of pain-related impairment. He recognized pain syndrome as a medically determinable impairment at step two, stated that he considered Plaintiff's pain reports, and expressly added limitations to the RFC "to address the pain experience beyond the musculoskeletal impairments that [Dr. Kwock] limited his opinions to." AR at 809, 818, 823-24. Any imprecision in Dr. Kwock's terminology did not prevent the ALJ from acknowledging pain syndrome or incorporating pain-related limitations. *See Ford*, 950 F.3d at 1154.

The ALJ also relied on the prior administrative medical findings of Norman Staley, M.D., and Dorothy Leong, M.D., which he found persuasive because they were supported by their review of, and consistent with, the longitudinal record. AR at 820. Plaintiff's conclusory assertion that those opinions lack support or consistency does not show error or undermine the substantial evidence on which the ALJ relied. *See Shinseki*, 556 U.S. at 409.

In sum, the ALJ reasonably weighed the competing medical opinions and adequately explained why he found Dr. Kwock and the state-agency physicians more persuasive than Dr. Maidan.

> 3.    *Remaining Medical Arguments*

Plaintiff devotes several pages to listing clinical findings without any corresponding analysis and then asserts that "[t]he ALJ erred by failing to fully account for these findings in his [RFC] assessment." (Dkt. # 19 at 3-9.) In the absence of any legal analysis, the Court declines to "manufacture arguments where none is presented." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

ORDER - 6

**B.      The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

An ALJ may reject a claimant's subjective testimony only by providing specific, clear, and convincing reasons. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). The ALJ need not accept every allegation or discuss the testimony line by line; the question is whether the rationale is "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499; *see Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

       *1.      Objective Medical Evidence, Abnormal Findings, and Treatment Course*

Plaintiff argues that the ALJ misapplied the objective-evidence standard by requiring full corroboration of his limitations and by emphasizing normal findings. (Dkt. # 19 at 9-10.) The decision instead reflects a longitudinal weighing of abnormal findings, benign findings, and treatment response.

The ALJ acknowledged significant abnormalities, including neck and spinal-cord damage from prior surgery, progressive arthritis and canal narrowing, and clinical signs such as reduced neck movement, increased tone, brisk reflexes, antalgic gait, difficulty rising, and decreased sensation. AR at 812-20 (citing, *e.g.*, *id.* at 303-04, 671, 746, 1273, 1297, 1319). On this basis, he found severe impairments and imposed meaningful functional restrictions. *Id.* at 809, 811-12.

At the same time, the ALJ cited numerous examinations with relatively mild or improving findings—normal or supple neck, normal respiratory and musculoskeletal exams, 5/5 strength, normal tone and bulk, negative straight-leg raise, and repeated observations that Plaintiff was alert, oriented, and in no acute distress—along with improvement on conservative treatment, including bracing, extensive physical therapy with "excellent" or "considerable" progress, and "some improvement" in depression on Wellbutrin. AR at 819-20 (citing, *e.g.*, *id.* at 304, 327, 355, 358, 371, 380, 387, 402, 462, 469-71, 483-84, 522, 529, 541, 555, 664, 679-80,

ORDER - 7

698, 701, 764-65, 1123, 1135, 1143, 1159, 1162, 1169, 1216, 1229, 1232, 1240, 1245-46, 1252, 1266, 1278, 1280, 1286, 1302).

In light of this record, the ALJ reasonably concluded that, although Plaintiff had significant pain and limitation, the evidence did not substantiate his claim that he could be out of his room only minutes at a time or had essentially no functional capacity on most days. AR at 55-61, 65-66. This reflects a permissible use of objective evidence and treatment history. *See Smartt*, 53 F.4th at 498-99.

### 2. *Pain Syndrome and Headaches*

Plaintiff asserts that his diagnosis of central pain syndrome fully accounts for his limitations and that reliance on Dr. Kwock "undermined" the decision. (Dkt. # 19 at 12.) The ALJ, however, accepted the existence of a pain syndrome and focused on the degree of resulting functional impairment.

The ALJ recognized pain syndrome as a medically determinable impairment, stated that he considered Plaintiff's pain, and added limitations to the RFC "to address the pain experience beyond the musculoskeletal impairments that [Dr. Kwock] limited his opinions to." AR at 809, 818, 823-24. The dispositive question was whether the asserted need to lie down most of the day, extremely limited sitting and standing, and near-total loss of hand function were consistent with the record as a whole. *Id.* at 818-20. The ALJ reasonably concluded they were not.

Headaches were evaluated similarly. The ALJ contrasted Plaintiff's testimony that he experienced headaches three times per week, lasting six hours and requiring him to recline, with treatment notes documenting no headaches, slight and infrequent headaches, moderate infrequent headaches, or moderate frequent headaches but also none, and with reports that medication was effective. AR at 818 (citing *id.* at 323, 335, 346, 348, 365, 490, 504, 513, 521, 567, 668, 1270,

ORDER - 8

1315). The ALJ reasonably found this pattern inconsistent with the alleged frequency and disabling impact.

### 3. Mental Health and COVID-19

Plaintiff contends that the ALJ improperly relied on the absence of psychiatric hospitalization and failed to consider COVID-19 treatment limitations. (Dkt. # 19 at 12-13.)

The ALJ noted that there were no psychiatric hospitalizations but also cited consistent reports of improvement on medication and multiple encounters documenting appropriate or normal mood and affect, normal behavior, thought content, and judgment, and at times euthymic affect and good eye contact. AR at 818-20 (citing *id.* at 462, 469-70, 484, 522, 541, 555, 680, 700, 764-65, 1123, 1135, 1143, 1159, 1162, 1169, 1216, 1232, 1245, 1252, 1266, 1278, 1280, 1286, 1302). This supports the finding that Plaintiff's depression and anxiety did not cause the disabling degree of limitation he alleged.

As to COVID-19, Plaintiff invokes the pandemic generally but identifies no specific recommended treatment he could not obtain or evidence the ALJ ignored. The ALJ relied on the substantial medical and specialty care actually provided during the relevant period.

### 4. Activities of Daily Living

Plaintiff contends that his yardwork, gardening, computer use, and driving do not demonstrate transferable work skills or sustained work capacity. (Dkt. # 19 at 13-14.) The ALJ did not treat these activities as proof of employability. AR at 820. He cited them to show inconsistency between Plaintiff's report that he could perform virtually no household chores (*id.* at 275), and evidence that he did yardwork, unloaded compost, completed a garden project, and used a computer and drove. *Id.* at 276, 380, 385, 402. Such inconsistencies are properly

ORDER - 9

considered when evaluating subjective complaints. *See Farlow v. Kijakazi*, 53 F.4th 485, 489 (9th Cir. 2022); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

> 5. *Remaining Testimony Arguments*

Plaintiff devotes several pages to recounting his testimony and then asserts, in conclusory fashion, that it was improperly rejected. (Dkt. # 19 at 14-17.) He does not explain how those summaries show error in the ALJ's stated reasons. Such undeveloped argument does not establish harmful error. *See Shinseki*, 556 U.S. at 409; *Indep. Towers of Wash.*, 350 F.3d at 929.

In sum, the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, for finding Plaintiff's testimony only partially consistent with the record. Even if the evidence could be interpreted differently, the Court must uphold the ALJ's rational interpretation. *See Smartt*, 53 F.4th at 494-95.

**C.     The ALJ Did Not Err in Evaluating Lay Witness Statements**

Plaintiff argues that the ALJ failed to evaluate lay evidence. (Dkt. # 19 at 18.) The ALJ stated that he "considered" the lay statements but did not separately address their persuasiveness. AR at 822. Any omission is harmless because the lay statements largely echoed Plaintiff's allegations, and the ALJ provided valid, well-supported reasons for discounting those allegations. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009).

**D.     The ALJ Did Not Err in RFC Assessment and Step Five Finding**

Plaintiff contends the RFC is incomplete and that the ALJ failed to meet his burden at step five. (Dkt. # 19 at 18-19.) These arguments rest on the premise that the ALJ erred in evaluating the medical opinion evidence and symptom testimony. As discussed above, the ALJ reasonably evaluated both. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

ORDER - 10

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 9th day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11